Good morning, your honors. May it please the court, Dean Kirby, Hovey and Kirby for the appellant. Your honors, with the exception of those on the bench here today, who in the world has never made a careless mistake? Everybody has. I brought a prop with me here. This is one of the briefs filed in this case. It's a red one. It's not mine. It says, Appellee's Substitute Opening Brief. And it's a substitute opening brief because the first brief submitted didn't comply with the court's rules. It was rejected. But the court and its procedures gave the appellee a chance to submit a new brief after the deadline. And when I saw this happening, I saw the first brief come in and the notices from the court come in and the substitute brief come in, and I couldn't help but think, well, what if we were arguing here today about that mistake, not Mr. Thorne's mistake, but that mistake? And I hope my colleague takes this in the good humor that it's offered. We could cite cases which hold that failure to follow clear, unambiguous rules of court can't ever be excusable neglect, can't be heard to argue that you didn't know about a rule, no satisfactory explanation exists for failure to follow rules. You didn't have to wait until the last day to submit your brief. Could have done it earlier, and then if this mistake had come to light, you could have filed your brief in proper form, timely. Relief denied. Appellant wins, in my dreams. Your Honors, anybody here could write that opinion, could cite those cases and make that sound like the law, and maybe make it sound like justice. Mr. Kirby, let me ask you, we are frequently asked to excuse errors by counsel who file things with us, and one of the reasons why we don't normally strike the substitute brief is because we tend to be probably fairly liberal about recognizing that our rules can be difficult to understand, and therefore we allow substitute briefs to be filed. But those are our rules that we're enforcing, and here the law gives the bankruptcy judge the discretion to decide whether or not she will enforce the rules in her court. And our standard of review is abuse of discretion. And the argument I hear you making is essentially a de novo argument that had we been sitting in her chair, we would have done just the opposite. And let's just take it on hypothetical that I agree with you, that I wouldn't have ruled that way. But do I still grant you the relief that you are requesting of us because of that, or do we have to simply defer and say we can't say that was an abuse of discretion? I understand, Your Honor. When a trial court's called upon to grant relief from a mistake, it acts in its discretion. And I fully recognize we don't start with a blank slate here. Standard is abuse of discretion. But an exercise of discretion may be freely overturned by this court, and this court can and should take a second look if it's clear that that exercise of discretion was based, one, on a finding of fact that's not supported by the record, or two, by a misapprehension of the law. And we have both here. Elaborate. This bankruptcy court made an express finding that these Chapter 11 debtors suffered prejudice in this case. And I don't see any. I don't either. That underpinning of the ruling is defective. Yes, Your Honor. And, you know, we've said it. If the delay was one day, what big impact on proceedings, you would say? Exactly. The problem, of course, arises in the reason for the delay. The reason is utter neglect? Well. I mean, the lawyer palmed it off on somebody else and didn't even check until it was too late. Didn't check to see if the brief was filed until the day after the deadline. Yeah. There's carelessness. But how can that be excusable? How can that be excusable? Well, Pioneer says that we can grant relief from attorney negligence. And I think that one. That's more than negligence. To send the brief to your other office to file and have it not be filed because of someone's mistake, his in not sending it quite soon enough, some employee of his office for not forwarding it until the day after. We're conceding, for purposes of this appeal, is negligence. But I think our concern is that the bankruptcy judge basically found that your client had failed to meet its burden of proof by offering sufficient evidence to address the factors. And, for example, she found that there was no detailed affidavit from the lawyer explaining exactly how it was that he had made arrangements to get the proof of claim filed. And I have to say, in reading that declaration, I understand her frustration. It's pretty vague and conclusory, almost as if he really didn't have a very good explanation. And rather than file a perjurious declaration, he just made very general statements in the hope that that would be good enough. Because, Your Honor, he perhaps misapprehended. And I think the bankruptcy court misapprehended what the law is about excusable neglect and what Pioneer holds. But whether he misapprehended or not, it's his obligation to fully and adequately explain his neglect. And if I read the bankruptcy court's ruling, what she said was, I'm not satisfied that he's explained why he didn't comply with my rules. What, then, Your Honor... And on that basis, I am denying relief. What if he just simply said, I was careless. It was utter negligence. I was careless. This sat on my desk and the day after the bar date happened, I looked and I saw it on my desk and I said, Whoops, better file that claim. It was negligence. It's negligence. Now, the fact that he didn't explain the negligence or prove, in my hypothetical, or prove that it wasn't negligence, doesn't mean that relief can't be granted under Pioneer. Doesn't there have to be some showing that it's excusable? I mean, if he'd have said, for example, I checked with Linda Cardozo before I sent it up there and she said, I'll take care of it. And she blew it. She didn't. That would be one thing. But he never checked with her, as far as I can tell for the record. He just blindly sent it to an office, she wasn't there, and then he never checked to see whether it had arrived or whether it had been filed until the bar date was gone. Now, how is that excusable? It's got to be excusable, not just negligence. Excusable negligence. I don't think that's what Pioneer says. Pioneer says we can give relief from just negligence. We can't give relief, perhaps, from flouting the rules. We can't get relief, perhaps, from gross negligence, like in some of these cases, the attorney, a sole practitioner with no secretary, goes on vacation for six weeks. Some of these apocryphal cases. But if the explanation is, I was careless, I was negligent, right? But, taking into account all these factors, it was simple negligence. It wasn't aggravated, gross negligence of the kind. Let's get back into what Judge Tallman brought up a little earlier, and that is the standard of review. Yes. And I don't see how we can sit here and say that the discretion that was exercised by this bankruptcy judge was abused, unless you can show us somehow that this is excusable negligence. And it doesn't seem to be excusable. Well, the court had to weigh all the factors and made a clearly erroneous ruling as to one. So abuse of discretion at this point is out the window. Because this court then has to take a fresh look. If the discretion is exercised based on either a misapprehension of the law or an improper finding of fact that's not supported by the record. Your Honor, if the trial court says I'm not satisfied with the facts, they just aren't there. I don't understand what this explanation is, and therefore I cannot decide that it is excusable. He hasn't met his burden of proof. How is that a misapprehension of fact? That seems to me to be a failure on the part of the lawyer to explain to the satisfaction of the court his actions. Your Honor, I think that that statement may hold within it the idea that under Pioneer that the explanation for the delay, which is one of the four factors, exercises some sort of gatekeeper function, some sort of preeminent overriding gatekeeper function that says that if you can't explain your negligence, which is to say really under the standard that's being used here in my opinion, unless you can show us it really wasn't negligence, we can't consider anything else. We won't consider anything else. As Judge Trott points out, the rule says excusable neglect. So clearly you can be negligent, but you have to explain to the court why we ought to excuse it. But the factors that we take into account in determining whether to excuse it are all factors, not just the reason for the delay, all factors. Was there prejudice? How long was the delay? Did the delay happen because of good faith conduct on the part of the lawyer or was there an ulterior motive for the delay? All of those things. In two other circuits, the first and the eighth, the rule is this. The four pioneer factors do not carry equal weight. The excuse given for the late filing must have the greatest import. And I'll tell you, Your Honor, first, those two cases which I brought along are not this case. The one case was the one I just alluded to a moment ago, the sole practitioner going on the vacation and vaguely stating that she was ill over a period of weeks. They may not be this case, but the rule. But how would you like us to write this case? What do you want us to say? I think that what should be said is this, that the explanation for the delay and a focus on the explanation for the delay is an improper focus. These cases are, in fact, wrong. Because what you'll get if the only thing that we inquire about and talk about and worry about in excusable neglect is the explanation for the delay is focusing on trivial matters that encourage people to offer excuses. Be more specific. You're writing the opinion. All right. And the last paragraph of the opinion says we reverse and remand because. Because what? Because the trial court used its discretion in that it improperly applied the pioneer test because it gave paramount importance to only one factor, the reason for the delay, and used that factor as a gatekeeper to deny consideration effectively of the other factors. So this court. Then we'd remand and say do it again and do it right. Well, this court has, once it is convinced that the standard was improperly applied legally, and once it's convinced that this court made a finding of fact that isn't supported by the record, can take a fresh look. Well, I don't think so. I mean, don't we send these things back? We're an appellate court. We say, okay, you got the test wrong. Here's the right approach. Now do it right. I mean, isn't that what we always do in sentencing and all of these things? If this case were sent back, it would be sent back to Judge Ryan. Judge Riddle is no longer on the bench, and he could reconsider that matter. And if that's the appropriate thing to do, then that's what we should do. Thank you, counsel. We'll hear from the other side. Even though you've taken up your time, we'll give you a chance to respond. Good morning, Your Honors. Eric Winston of Stutman, Treaster & Gladd Professional Corporation on behalf of the appellee. I hadn't actually planned to talk about it today, but since it's been raised in good humor and I did actually prepare a couple pages of notes, I thought I would address the issue of the briefing to this court and whether or not it is analogous to the actions of Mayor Mace's counsel. You know, you can argue whatever you want, but you're going to waste my time by talking about the briefs. I want to know about what the court did, the bankruptcy court. Fair enough. Then I'll move straight to the issues of the excusable neglect, which appears to be the focus of the arguments today. As Your Honor noted to opposing counsel, the standard of review here is abuse of discretion. And as abuse of discretion, this court must conclude, in order to reverse, that it has a definite and firm conviction that no reasonable court could reach the result that the bankruptcy court reached here. This court analyzed the evidence in great detail, analyzed Pioneer in great detail, and made findings and conclusions from the evidence that I haven't seen in my practice as a bankruptcy court practitioner in the level of detail. Who prepared the findings? My firm did. Surprise. Right. Leave the characterization of your own work. You prepared a slam dunk and now you're amazed that she signed it? I will. Not a softball question. Maybe you should go back to your briefing explanation. I guess my point was, at oral argument, this court clearly went through the evidence that was presented to her in great detail and analyzed and thought about why Mira Mesa's counsel was submitting a declaration that was completely full of holes, lacking explanations for lapsing times, knowledge, excuses that were illogical on their face. And the court concluded, based upon Pioneer, based upon all the factors that it did analyze, and based upon the evidence, that a motion to enlarge the time was not warranted. Now, I'm going to go through the factors in more great detail, but I do want to point out to the court that this is not the only time that this has happened. In the Alcotton case, which is a district court opinion affirming a bankruptcy court decision from the Southern District of New York, facts very similar to the facts here. The only difference between Alcotton and here was that there the claim was filed 18 days late. Here it was filed one day late. What's the prejudice? Where's the prejudice? Interestingly, in Alcotton, there was no prejudice. What's the prejudice here? Here, there was evidence, which the court credited, that there is a danger of prejudice. And the danger of prejudice was at the time of the filing of the motion, the debtors were considering a pot plan. Now, I will concede, for purposes of this argument, that if that is prejudice, it's very little. It is not the same thing as after a plan has been confirmed. Can the actual prejudice at all be zero? Ultimately not. Right. Ultimately not. And the length of delay is one day. And the length of delay is one day, which is as de minimis as it gets. So the first two factors, I mean, evaporate like rain on a hot road in Arizona during August, right? I mean, poof. Pretty much. I will ‑‑ I certainly can't argue about the length of delay, though I would note, for the record, that though the claim was only filed one day late, there was actually more of a delay in terms of actions from NIRMASA. I think that goes more towards the good faith argument. But there was, in fact, a longer delay in terms of getting this matter resolved. Though I will concede that there's no doubt the claim was only filed one day late, and that is a proper inquiry for purposes of the length of delay factor. So what we're left with are the excuses factor and the good faith factor. There are at least now four circuits that have said that the excuses factor is the most significant factor. Not the only one that a court should consider, but the most significant. Now, there's no showing of bad faith here either. I mean, goofing up is not bad faith. I will concede goofing up is not bad faith, but where the court concluded there was bad faith taken from the totality of the circumstances which this Court used in Kyle v. Campbell Sue is instead of just owning up to his mistake, he attempted to blame others. He first attempted to blame me by saying that I somehow misled him into believing the bar date had been extended. That argument made no sense because when these alleged conversations occurred, occurred prior to the bar date being established at all. So how can a non-established bar date be extended? And then after Mayor Mace of Council admitted he had received the bar date, mid-December 2000, no action was taken until February 1st, even in terms of the filing of the proof of claim. There was no call to find out I'm confused about this bar date. Is it in fact on January 31st, 2001? I'm confused about what I'm supposed to do. Please advise. Nothing like that happened. And now on January 26th, which was a Friday, and the bar date was on Tuesday, January 31st, which means only three business days, instead of just sending it by Federal Express to the Court, Mayor Mace's San Diego office council sends it to its Newport Beach offices council. We don't know how it was sent. We don't know who sent it. All we know is that it ended up on the desk of an attorney that wasn't there. There was no follow-up at all. From the totality of the circumstances, the excuses make no sense, and then the attempt to blame others gives rise to the finding of bad faith. Now, it is entirely possible that 99 percent of the other bankruptcy courts in the United States would not have found bad faith there. The question is, is no reasonable court reach this conclusion? And since in the Alcotton case, there was no prejudice whatsoever, there was no length of delay problem, and there was no bad faith. There was just a bad excuse. The fact that that court concluded it was not an abuse of discretion for the bankruptcy court in that case to say that there was no excusable neglect, it's hard to see how it's going to happen here as an abuse of discretion standard. If Your Honor has any other questions on this particular point, I would actually just move on very briefly to the informal proof of claim argument, unless the Court would prefer that I not address that. It's your choice at this point. I don't think much else needs to be said about the other. It's adequately briefed. It's adequately briefed. Thank you, Your Honor. Thank you, Counsel. Your turn. Your Honors, I think that if the rule in this circuit is going to be that the reason for the delay serves as a gatekeeper to the other four pioneer factors, that what every inquiry into whether relief from an honest and trivial mistake like this is going to be, is what's your excuse? Let's have the declaration of your paralegal. How do we know that it's honest and trivial? I still don't understand what your client's explanation was for the arrangements that were made to get this thing to the Santa Ana Courthouse. Well, we know it was trivial. How do we know that? I mean, let's take Mr. Winston's argument. Why couldn't they just put it in an overnight Federal Express package and have it delivered directly to the clerk of the bankruptcy court, sent out on Friday the 26th when there was still plenty of time to get it there by the 30th? In fairness, Your Honor, I could speculate about why we use runners from offices in Orange County rather than Federal Express, but that's not part of the record. But we can't speculate. No, that's right. We're reviewing on an abuse of discretion standard, and the fact finder says I haven't been given adequate facts to determine that there was a good reason for missing the deadline. And I therefore infer, I think the bankruptcy court said, that it was just negligence. Just negligence. He was negligent. I don't accept any of these explanations. But if all we're going to talk about is whose paralegal was on vacation, who wasn't at their desk, whether the document fell behind the credenza, aren't we sort of cheapening the whole process? Is that what Pioneer tells us to do? Why is this excusable? Why is this excusable? Because it's no big deal? Why is it excusable neglect? You can say it's neglect. Why is it excusable neglect? It's neglect because, first of all, it was simple negligence. It was negligence. Why is it excusable? And it's excusable because, number one, the delay resulting from the negligence was insignificant as a matter of law. There was no prejudice. He acted in good faith. There's no reason to take this half-million-dollar burden and place it, take it from the shoulders of the debtor who elected to breach its contract under the bankruptcy laws and put it on the shoulder of this landlord and this attorney. That's not fair. It's not just. And that's what Pioneer tells us to consider. And the idea that we have to inquire about whose paralegal is on vacation in order to reach that inquiry and that analysis is, I don't think, the law. And I don't think that, and I think this panel has the opportunity, as Your Honor asked me right before the break, to say that it's not the law and to say that this isn't the gatekeeper. This is one factor. And if the analysis, apparently on its face, shows that it was treated as the gatekeeper as opposed to Wade, then error occurred, legal error occurred, as well as an erroneous finding of fact. Thank you, counsel. The case just argued is taken under submission.
judges: Trott, Tallman, Collins